UNITED STATES of America, Appellee,

v.

Mary Burton FULLER,
Defendant, Appellant.

UNITED STATES of America, Appellee,

v.

David LAWRENCE,
Defendant, Appellant.

Nos. 84-1459, 84-1460.

United States Court of Appeals,
First Circuit.

Argued April 2, 1985.

Decided July 22, 1985.

Miniard Culpepper, Dorchester, Mass., for Mary Burton Fuller.

James P. Duggan, Concord, N.H., with whom John E. Conwell, Boston, Mass., was on brief for David Lawrence.

Susan L. Howard, Asst. U.S. Atty., Concord, N.H., with whom Bruce E. Kenna, U.S. Atty., Concord, N.H., was on brief, for appellee.

Before BREYER, Circuit Judge, RO-SENN,* Senior Circuit Judge, and TORRU-ELLA, Circuit Judge.

TORRUELLA, Circuit Judge.

Appellants Mary Burton Fuller and David Lawrence were tried jointly before a jury and convicted of knowingly receiving a firearm after having been convicted of a crime punishable by more than one year imprisonment, a violation of 18 U.S.C. §§ 2, 922(h)(1), 924(a). Fuller in addition was convicted of making false statements in connection with the acquisition of a firearm from a licensed dealer in violation of 18 U.S.C. §§ 2, 922(a)(6), 924(a). Lawrence was sentenced to one year imprisonment, and Fuller received two terms of eighteen months each to be served concurrently.

Evidence adduced at trial showed the following sequence of events. On October 20, 1983, the appellants drove together from their home state of Massachusetts to a shopping mall in Newington, New Hampshire. They entered the sporting goods department of Montgomery Ward, a licensed firearm dealer, approached the gun counter, and Lawrence began conversing with Andrew Werry, the sales person there. As they talked, Werry showed several guns to Lawrence, who eventually indicated that he was interested in a particular one.

Fuller said she would pay for the gun with her store charge card, for which she had just opened an account that same day in the name of Karen Fisher. Werry then asked her to fill out the forms required for the purchase of a firearm. On a green form, which she filled out in the name of Karen Fisher, she answered "No" to the question: "Have you ever been convicted in any court of a crime punishable by imprisonment for a term exceeding one year?" She signed at the bottom of the form where it was printed "Transferees, buyers signature." She next filled out a second, yellow form, again answering "No" to the question regarding prior convictions and signing Karen Fisher at the bottom. Werry then informed the appellants that the paper work would take time to process and that they could return in 10 days to pick up the gun. He then sent the forms to the Boston Police Department's Licensing Unit for a record check.

The prior convictions of both appellants apparently showed up during the record

---

* Of the Third Circuit, sitting by designation.

check and the police department notified the store. When Fuller and Lawrence returned to pick up the gun on October 31, 1983 another store employee told them the paperwork was not yet done and that they should return the following day. The next day they were met at the gun counter by Werry and an undercover agent from the Federal Bureau of Alcohol, Tobacco and Firearms who pretended to be a new trainee in the store.

Fuller identified herself as Karen Fisher and asked for the gun. Werry retrieved the gun from the back room and Lawrence picked it up and examined it. Lawrence and Werry then talked for a short time about scopes while Fuller wandered off to another department where she purchased a plant. When Fuller returned to the gun counter, she bought the gun, charging it to her store account. She then left the store with Lawrence, carrying the gun in her arms. Fuller later testified that Lawrence had tried to carry the gun out of the store but that the clerk had required that Fuller carry it because she was the purchaser. Once outside the store, the appellants were arrested. After a jury trial, the defendants were convicted and sentenced as described above.

■ Defendant Lawrence raises three issues on appeal. The first involves defendant Fuller taking the witness stand to relate to the court her version of the events leading up to the gun purchase. Lawrence now asserts that the judge should have given the jury a cautionary instruction, *sua sponte*, advising them to scrutinize her testimony carefully in light of her self-serving motives in testifying.

Lawrence's counsel made no request for such a cautionary instruction, nor did he object when the court failed to give any. Since no objections were made before the jury retired, *see* Fed.R.Crim.P. 30, this court may take notice of the district court's failure to give *sua sponte* instructions only if such failure amounts to "plain error." Fed.R.Crim.P. 52. In reviewing a claim of plain error under these circumstances, we look to the nature of the accomplice's testimony to see whether it is internally consistent and credible. *See United States v. Kakley,* 741 F.2d 1, 4 (1st Cir.1984); *United States v. Fortes,* 619 F.2d 108, 124 (1st Cir.1980).

During direct examination, Fuller made numerous statements about Lawrence's involvement in the firearm purchase. She said that when she travelled to New Hampshire it was not for the purpose of buying a gun, Trans. at 279, that she bought the gun not for herself but for Lawrence, Trans. 283–84, that after she paid, Lawrence "took possession of the gun," Trans. at 293, and that Lawrence reimbursed her for the cost, Trans. at 295. While these statements are damaging to Lawrence's defense, they are not necessarily incredible or internally inconsistent, and in fact fit into the factual situation previously described. They do not meet the plain error standard mentioned above.

In addition, the court's jury instructions did emphasize to the jurors the necessity of their scrutinizing all testimony carefully. Particularly relevant to Fuller's testimony was the judge's admonishment to the jurors that they must independently assess the credibility of each witness, bearing in mind "the interest of the witness, if any, in the final outcome of the case." Trans. at 408. The jury knew that Fuller was a codefendant in the case and that she was testifying on her own behalf, not as a government witness against Lawrence. We find the court's instruction effectively designed to alert the jury to view Fuller's testimony with the appropriate level of caution.

Lawrence next claims that the evidence produced at trial was insufficient to sustain his conviction under count two of the indictment. That count charged the defendants with having received, or having aided and abetted each other in receiving, a firearm that had been transported in interstate commerce, after they both had been convicted of crimes punishable by a prison term exceeding one year. 18 U.S.C. §§ 922(h)(1), 924(a), 2. At trial the parties stipulated that the firearm had been

shipped from Pennsylvania to New Hampshire and that both defendants had been convicted of crimes punishable by more than one year imprisonment. Thus, the only element remaining to be tried on this count was the receiving of the firearm by the defendants.

Lawrence points out that the government offered no evidence at trial to show that he actually possessed the gun. The offense, however, was not restricted by the requirement that Lawrence have actual possession. As the judge instructed the jury, *see* Trans. at 423, Lawrence could be convicted upon the jury's finding, beyond a reasonable doubt, either that he aided and abetted Fuller in receiving the gun, or that he himself constructively possessed the gun.

■ When reviewing a claim of insufficiency of evidence as here, we must consider the evidence in the light most favorable to the government and decide whether it can support a finding of guilt beyond a reasonable doubt. Under this standard, we find the evidence presented was more than sufficient to support the jury's verdict based on either theory, aiding and abetting or constructive possession.

Trial testimony indicated that Lawrence accompanied Fuller all three times that she went to Montgomery Ward's sporting goods department to make inquiries about purchasing the gun. Trans. 181, 233–34, 154. Lawrence discussed various guns and scopes with the salesperson there and selected the particular gun that Fuller eventually bought. Trans. at 182. After Fuller charged the gun to her account, Lawrence reimbursed her in full for the cost. Trans. at 295. He also apparently attempted to carry the gun out of the store, but was told that Fuller had to carry it out since she was the purchaser. Trans. at 293. The testimony also shows that Lawrence was aware of Fuller's previous conviction for mail fraud and could well have known that she made false statements when filling out the store forms. The jury, therefore, could have found that Lawrence aided and abetted Fuller in receiving the gun and/or that he did have constructive possession of it.

Finally, Lawrence asserts an ineffective assistance of counsel argument, claiming his court-appointed trial attorney so prejudiced his rights that the conviction must be overturned. Lawrence cites several instances of alleged errors by his attorney. These include that counsel filed no request for specific jury instructions, that he told the jury in his opening statement that the defendant had been convicted of a misdemeanor fourteen years earlier, and that counsel failed to file a motion to sever in light of Fuller's potentially damaging testimony.

■ The proper standard for reviewing a claim of ineffective assistance is set out in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in which the Supreme Court stated:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result.

*Id.* 104 S.Ct. at 2064. The defendant must show both that his counsel's performance was deficient and that it prejudiced the defense. *Id.* This second point requires a showing that the outcome of the trial would have been different but for counsel's errors. *Id.* at 2068.

■ After careful review of Lawrence's claims on this issue, we conclude that the appellant has demonstrated neither egregious attorney error nor resulting prejudice. In sum, we reject all three of Lawrence's claims and affirm his conviction.

We turn then to appellant Fuller's claims of trial court error, of which there are allegedly three.

■ Fuller claims first that her conviction must be reversed because she was prejudiced when the trial judge allowed Fuller's probation officer to testify over her objection. When Fuller requested an offer of proof, government counsel indicated he wanted to elicit, among other things, the fact that Fuller was on proba-

tion for a separate offense at the time she was arrested for the current charges. The judge initially stated that the probative value of such testimony would be far outweighed by the prejudice it would likely cause. Nonetheless, the judge did grant the government's request to allow the testimony simply to elicit the probation officer's identification of the defendant as Mary Burton or Mary Burton Fuller. Appellant contends that this was reversible error because the probation officer was presented as a surprise witness and that her testimony was indeed more prejudicial than probative.

While we may agree that the probation officer should not have been allowed to testify, we cannot agree that the error warrants reversal. The prejudicial effect of allowing a probation officer to testify to knowledge of a defendant usually derives from its concomitant effect of letting the jury know the defendant has a prior conviction. *See, e.g., United States v. Calhoun,* 544 F.2d 291 (6th Cir.1976). Here, however, Fuller had already stipulated as to the existence of her conviction for mail fraud. Trans. at 253–54. The government would have had to elicit this same information anyway to prove an element of the crime, *i.e.,* conviction of a crime punishable by more than one year. 18 U.S.C. §§ 922(h)(1), 924(a), 2. In light of the jury's previous knowledge of Fuller's conviction, therefore, the information could not have been so prejudicial to Fuller that she was deprived of her right to a fair trial.

Fuller also asserts prosecutorial misconduct in that the government's final argument and rebuttal were grossly misleading and prejudicial. We find this contention unsupported by the record. The defendant made no objections to the conduct of government counsel at trial, which in itself would now require a showing of plain error for us to consider it on appeal. Fed.R. Crim.P. 52. Fuller has made no such allegation in her brief.

■ Moreover, the instances of alleged misconduct cited in appellant's brief appear to amount to no more than diligent and responsible trial advocacy by government counsel. Fuller contends that the prosecutor improperly stated her own personal opinion as to Fuller's credibility, and twice mis-stated the evidence during her closing argument. In reviewing this claim, we must ask whether the prosecutor's argument, taken as a whole in the context of the entire case, prejudiced substantial rights of the defendant. *United States v. Corona,* 551 F.2d 1386, 1388 (5th Cir.1977). A reversal would only be warranted if the alleged misconduct was likely to have affected the trial's outcome or if it was necessary to deter future misconduct. *See United States v. Capone,* 683 F.2d 582, 585–86 (1st Cir.1982); *United States v. Farnkoff,* 535 F.2d 661, 668 n. 17 (1st Cir.1976). Since Fuller has shown neither substantial misconduct nor prejudice, we reject this claim.

■ Lastly, like her codefendant Lawrence, Fuller contends that she received ineffective assistance of counsel at trial. Primarily, she claims error by her attorney when he stipulated as to Fuller's prior conviction and to the fact that the firearm had been shipped in interstate commerce. This left only one element of the crime to be proved. While it is true that these stipulations may have saved the government some leg-work by lightening its burden of producing evidence on every element of the offense, the appellant has not even suggested that these two factors were not readily provable simply by reference to public records and the like.

■ Further, Fuller complains that her attorney made no motion to suppress the production at trial of the various credit cards and driver's license seized at the time of her arrest. Again, however, Fuller makes no assertion that there existed any basis whatsoever for making such a motion. "Defense counsel is not required to file a motion to suppress in every case in which evidence obtained by a search is offered against a defendant. On the contrary, counsel must exercise his best professional judgment in deciding whether there are sufficient grounds for filing a

motion." *United States v. Brown*, 663 F.2d 229, 231 (D.C.Cir.1981). As noted in our discussion of Lawrence's claim of ineffective counsel, *supra*, the essential factor to consider is whether the attorney acted reasonably under prevailing professional norms. *Strickland v. United States*, 466 U.S. 668, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). Having reviewed Fuller's several claims of counsel's incompetence, including those mentioned above, we conclude that they are without merit.

Accordingly, the convictions of both appellants Lawrence and Fuller are affirmed.

*Affirmed.*