UNITED STATES, Appellee,

v.

**Allen J. CAGGIANO, Defendant, Appellant.**

No. 87–1876.

United States Court of Appeals, First Circuit.

Heard Jan. 8, 1990.

Decided March 26, 1990.

---

Arza Rayches Feldman, with whom Feldman and Feldman, was on brief for appellant.

Stephen Higginson, Asst. U.S. Atty., Washington, D.C., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for the U.S.

Before BREYER, Circuit Judge, BOWNES, Senior Circuit Judge, and CYR, Circuit Judge.

BOWNES, Senior Circuit Judge.

Defendant-appellant Allen Caggiano appeals his jury trial convictions on five counts of violating federal firearms laws under different parts of 18 U.S.C. § 922 and 18 U.S.C. App. II § 1202. The issue on appeal is whether his attorney rendered ineffective assistance because he withdrew motions to suppress the firearms that were the grounds for defendant's convictions. We reject the ineffective assistance of counsel claim.

## I. APPELLATE JURISDICTION

As a preliminary matter, we rule that this appeal is properly before us. Most ineffective assistance claims arise after the completion of trial and require an independent factual inquiry into the merits of the claim. The proper route for such claims is through a collateral proceeding in district court pursuant to 28 U.S.C. § 2255 (1982) so proper factual determinations can be made. *See United States v. Hoyos-Medina*, 878 F.2d 21 (1st Cir.1989); *United States v. Carter*, 815 F.2d 827, 829 (1st Cir.1989). In the case before us, however, the defendant's ineffective assistance claim is confined to matters found in the trial record and in an affidavit submitted by his trial attorney explaining the withdrawal of the suppression motions. Since there is no need for additional fact finding, the issue is properly before us on direct appeal. *See Brien v. United States*, 695 F.2d 10, 13 (1st Cir.1982) (stating that "[w]hile some ineffective assistance claims might be capable of presentation solely on the record of the criminal trial itself, most such claims require the independent development of evidence outside of, and collateral to, the criminal proceeding"). This is an ineffective assistance claim that can be decided on the record before the court without further fact finding.

## II. THE FACTS

Defendant was arrested and indicted pursuant to the execution of two search warrants. The issuance of both warrants was based on the affidavits of Detective Washek of the Brockton Massachusetts Police Department. In the affidavit for the first warrant, Washek stated that his information came from an informant who had supplied information in the past that had resulted in several drug-related arrests. The affidavit contained the following information: Defendant, known to the informant as "Al," was distributing cocaine from his apartment at 14 Tremont Street, Brockton. The other occupants of the apartment were named. The informant had visited the apartment between July 2 and July 7, 1986. On three different occasions, the informant saw persons come into the apartment, hand cash to Al and receive in exchange glassine bags of white powder. Al told the informant on July 7 that the bags contained "pure coke." Washek stated in his affidavit that the informant was a former "user" and familiar with the way drugs are packaged and the terminology of the drug trade.

The informant told Washek that there were guns in "Al's" apartment. On the basis of this, Washek asked for and was issued a "no knock" warrant. The warrant authorized the police to enter defendant's apartment and search for cocaine and drug-related paraphernalia. It did not list guns as items sought.

The warrant was executed on the day it was issued, July 7, 1986, by Washek and five other Brockton police officers. Three bags of white powder and drug paraphernalia were seized. In searching defendant's apartment the police also found and seized two shotguns, three boxes of shotgun shells, four boxes of 9 millimeter rifle ammunition, a manual for an Uzi semiautomatic rifle and a barrel for the Uzi. The shotguns were in a closet that opened into the kitchen. The ammunition was on a kitchen shelf and the manual and Uzi barrel were in a suspended ceiling of an office next to the kitchen.

The second warrant was obtained and executed on November 22, 1986. In the affidavit Washek also relied on an informant for his information. The credentials of the informant were practically identical to those given by Washek for the informant in the affidavit for the first warrant. Washek did not state that the informant was the same person who had given him the information for the first warrant. The facts given Washek by the informant were as follows: Defendant was distributing narcotics from his apartment at 14 Tremont Street. The informant visited defendant's apartment between November 17 and November 21, 1986. On two occasions he saw people pay money to defendant for glassine bags of white powder. After one sale, defendant told the informant that "he had just sold an ounce for $1,600." The informant reported that defendant showed him a large handgun, said that he kept it for protection and would use it, if necessary. As before, Washek asked for and received a "no knock" warrant to search for cocaine and drug-related paraphernalia.

Washek and five other police officers executed the warrant at 7:30 p.m. on the day it was issued. Defendant's apartment was searched and the following items were seized: two bags of white powder, narcotics paraphernalia, one round of ammunition, gun powder, and a .44 Virginian Dragoon Magnum handgun.

Based on the firearms seized in both searches the defendant was indicted on five counts of violating federal firearms laws.[1] Prior to trial defendant's counsel filed four motions to suppress the firearms evidence seized during the two state searches. The government filed a response to the motions; defense counsel did not pursue the motions and withdrew them on the day trial started. Defendant was convicted on all counts for which he was prosecuted.

## III. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant claims that he was denied his constitutional right to effective assistance of counsel because his attorney withdrew the motions to suppress the firearms that were the basis for his conviction.

The Supreme Court in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) established a two-part test for ineffective assistance claims. A defendant must first demonstrate that his attorney's performance was deficient and then show that this deficiency prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. This test is grounded in the sixth amendment's requirement for a fair trial, and therefore, "unless a defendant makes both showings, it cannot be said that the conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.; see also United States v. Fuller,* 768 F.2d 343, 346 (1st Cir.1985). Because the claim of deficient performance is limited to the withdrawal of the suppression motions, we proceed directly to the question of prejudice.

■ In order for the defendant to show that he was prejudiced by the withdrawal of the motions, he must demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors [with-

---

1. One count was dismissed by the government at the start of the trial.

drawal of the suppression motions], the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Fuller*, 768 F.2d at 346. When the claim of prejudice is grounded on the failure to litigate a fourth amendment claim, "the defendant must also prove that his fourth amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence." *Kimmelman v. Morrison*, 477 U.S. 365, 375, 106 S.Ct. 2574, 2583, 91 L.Ed.2d 305 (1985). Because there would have been no prosecution absent the firearms evidence, the only question before us is the validity of the searches and seizures. If the searches and seizures were valid, then defendant's fourth amendment claim is meritless, and he can show no prejudice from his trial attorney's withdrawal of the suppression motions.

Defendant attacks the searches on the grounds that the warrants lacked probable cause. His fall-back position is that the plain view doctrine does not apply to the seizures of the firearms. We start with the issue of the validity of the search warrants.

## A. *Probable Cause*

■ Defendant contends that the affidavits submitted for the warrants were insufficient for the magistrate's finding of probable cause. His argument focuses on the alleged lack of information as to the reliability of the informants and the claimed insufficiency of details about the drug dealing activities of defendant given by the informants to Officer Washek.

Our review of an affidavit for probable cause is made under "the totality of the circumstances" analysis established in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). The central teaching of *Gates* is that "probable cause is a fluid concept," *id.* at 232, 103 S.Ct. at 2329, and its determination cannot be based on hard certainties and rigid rules. *Id.* at 231–32, 103 S.Ct. at 2328–29. After rejecting the two-pronged test of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), the Court held:

> In its place we reaffirm the totality-of-the-circumstances analysis that traditionally has informed probable-cause determinations. The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

*Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332 (citations omitted). We have applied *Gates* in a number of cases. *See, e.g., United States v. Nocella*, 849 F.2d 33, 39 (1st Cir.1988); *United States v. Ciampa*, 793 F.2d 19, 22 (1st Cir.1986) and cases cited therein.

The first question is the reliability of the informants. Defendant first points out that it is not clear whether there were one or two informants. Both affidavits used almost identical language in describing the reliability of the informant.[2] We do not think it matters whether there were one or two informants. We assume there were two. The question is the reliability of the informants. This depends not only on what the affiant states[3] as to reliability but also

---

**2.** The first affidavit states: "This informant has proven reliable in the past by supplying information resulting in the arrests of several people. These arrests were drug related." The second affidavit states: "This informant has proven reliable in the past by supplying information resulting in the arrests of several people for drug related offenses."

**3.** We note that defendant's trial attorney filed a motion in state court for a *Franks v. Delaware* hearing, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), subsequent to the execution of the second warrant. The motion was denied in a written opinion by a justice of the Massachusetts Supreme Court.

on the information given to the affiant by the informants.

Defendant argues that, because the affiant gave no details about the arrests that he attributed to the informants,[4] the claim of reliability was unsubstantiated. We agree that the reliability information in both affidavits is more conclusory than specific. But we are no longer dealing with the two-pronged test of *Aguilar* and *Spinelli;* under *Gates*, we must look at the totality of the circumstances. The reliability of the informants was enhanced by the specificity and details given Officer Washek of what they saw and heard while they were in defendant's apartment. They saw the exchange of money for glassine bags containing white powder. Defendant told the first informant that the substance was "pure coke." According to the second informant, defendant told him, after an exchange of money for a bag of a white powdery substance, that "he had just sold an ounce for $1,600." The second informant also reported that defendant showed him a handgun, stating that he kept it for protection and would use it, if necessary.

This information was not conclusory, nor was it, as is sometimes the case, *see United States v. Ciampa*, 793 F.2d at 24, based on hearsay. Our review of both affidavits convinces us that the issuing magistrate had a "substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332.

B. *The Applicability of the Plain View Doctrine*

■ The plain view doctrine authorizes the seizure and introduction into evidence of items found in plain view during a lawful search even though they are not included within the scope of the warrant. *See Arizona v. Hicks*, 480 U.S. 321, 326–27, 107 S.Ct. 1149, 1153–54, 94 L.Ed.2d 347 (1987);

*Coolidge v. New Hampshire*, 403 U.S. 443, 465–71, 91 S.Ct. 2022, 2037–41, 29 L.Ed.2d 564 (1971). Three criteria must be met for the plain view doctrine to apply.

First, the officers' presence at the point of discovery must be lawful. Second, discovery of the seized item must be inadvertent. Third, the item's evidentiary value must be immediately apparent to the searchers. *See Texas v. Brown*, 460 U.S. 730, 736–37, 103 S.Ct. 1535, 1540–41, 75 L.Ed.2d 502 (1983); *Coolidge v. New Hampshire*, 403 U.S. 443, 465–70, 91 S.Ct. 2022, 2037–40, 29 L.Ed.2d 564 (1971) (plurality opinion); *United States v. Garcia Rosa*, 876 F.2d 209, 218–19 (1st Cir.1989); *United States v. Aguirre*, 839 F.2d 854, 858 (1st Cir.1988); *United States v. Johnston*, 784 F.2d 416, 419 (1st Cir.1986) (Johnston I).

*United States v. Rutkowski*, 877 F.2d 139, 140–41 (1st Cir.1989).

Because we have found that the warrants had a probable cause foundation, the first criterion, lawful presence of the searching officers, has been met. Defendant concedes that the discovery was inadvertent, appellant's brief at 11 n. 3, so the second criterion has been met.[5] The question, therefore, is whether the evidentiary value of the firearms was immediately apparent to the searchers. We do not see how this can be seriously disputed.

It is now recognized by us and other circuits that firearms are one of the tools of the trade of drug dealers. Guns, like glassine bags, scales and cutting equipment are an expected and usual accessory of the narcotics trade. *See United States v. Green*, 887 F.2d 25, 27 (1st Cir.1989); *United States v. Hinds*, 856 F.2d 438, 443 (1st Cir.1988); *United States v. Cresta*, 825 F.2d 538, 554 (1st Cir.1987), *cert. denied sub nom, Impemba v. United States*, 486

---

**4.** In his brief, defendant states: "The affidavit fails to indicate the exact number and names of the persons the informant helped arrest and when the arrests occurred. More importantly the affidavit fails to indicate whether these individuals were convicted."

**5.** Defendant has not claimed that the search exceeded the scope of the warrant. In execu-

ting a warrant authorizing them to search for cocaine and drug-related paraphernalia, the officers had a right to examine closets and shelves, open drawers, and look into suspended ceilings, all likely hiding places for cocaine. Items found inadvertently during such a search were in "plain view." *See United States v. Rutkowski*, 887 F.2d at 141 and cases cited therein.

U.S. 1042, 108 S.Ct. 2033, 100 L.Ed.2d 618 (1988). Any reasonably competent police officer who discovered firearms while searching for drugs would be immediately aware of their evidentiary significance. We hold that the plain view exception to the warrant specificity requirement applies to the seizure of the firearms.

Because we have found that the seizure of the firearms and their admission into evidence was proper, we conclude that defendant suffered no prejudice from his trial attorney's withdrawal of the motions to suppress, and thus, his ineffective assistance of counsel claim fails. Accordingly, we need not determine whether the attorney's performance was deficient. Based on our reading of the record, however, we have no hesitancy in saying that in our opinion defendant's trial attorney did a competent workmanlike job for defendant; his withdrawal of the motion to suppress was an informed acknowledgement of the pertinent law, not deficient representation.

*Affirmed.*