UNITED STATES of America

v.

Michael J. TAYLOR and Jean M. Taylor, Defendants.

Crim. A. Nos. 91–00056–B–01, 91–00056–B–02.

United States District Court, D. Maine.

Sept. 27, 1991.

See also 774 F.Supp. 44.

Timothy D. Wing, Asst. U.S. Atty., Bangor, Me., for U.S.

Gary Growe, Bangor, Me., for Michael Taylor.

J. Hilary Billings, Bangor, Me., for Jean Taylor.

## ORDER AND MEMORANDUM OF OPINION

BRODY, District Judge.

Defendants Michael and Jean Taylor were indicted on July 23, 1991 under 21 U.S.C. § 841 and 18 U.S.C. § 2 for knowingly and intentionally manufacturing a quantity of marijuana and aiding and abetting the commission of that offense. The Taylors have moved to suppress the marijuana plants and drug paraphernalia seized when law enforcement officers executed a search warrant issued by a Maine state court judge. A hearing on the motion was held on September 20, 1991. For the reasons stated below, defendants' motion is DENIED.

On July 17, 1991, the Bureau of Intergovernmental Drug Enforcement ("BIDE")

sought and obtained a warrant authorizing the search of Michael and Jean Taylor's mobile home. The affiant, Special Agent Robert Hutchings, stated that probable cause to believe that the Taylors were growing marijuana was established by his conversation with a confidential informant, CI # 911, who had "provided reliable information in the past." The informant reported that: Mike and Jean Taylor were both raising marijuana plants; that within the past two weeks he had personally observed numerous plants growing around the structure in which Mike lived, numerous marijuana plants growing in Jean's garden and a four foot plant growing by Jean's trailer door; that six weeks earlier, Jean had hundreds of seedlings set out in her backyard and that he had heard Jean Taylor complain about the amount of work required to care for so many plants; and that earlier in the winter he had observed numerous seedlings being started in Mike's trailer. The only independent "investigation" or "corroboration" which the affidavit mentions is Hutchings' review of a five year old case disposition report indicating that Jean Taylor had pleaded guilty to two counts of trafficking in marijuana in state court on October 8, 1986 and a five year old affidavit which presumably served as the basis for the search warrant leading to Jean Taylor's 1986 conviction.

Michael and Jean Taylor argue that the affidavit fails to establish probable cause and that all of the marijuana plants and drug paraphernalia seized must be suppressed. Defendants complain, in particular, that the reliability of the informant is not adequately established[1] and that the information provided by the informant is stale.

■ We first address whether the affidavit provides enough information about the reliability of the informant to support a finding of probable cause. We conclude that in the wake of the Supreme Court's decision in *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the affidavit is sufficient despite the conclusory and unsubstantiated description of the informant's reliability and the absence of independent corroboration.

Historically, confidential informants have been treated as the least credible source of information about the commission of crimes not only because informants enjoy anonymity, but also because they are often "criminals, drug addicts, or even pathological liars." Michael Rebell, *The Undisclosed Informant and the Fourth Amendment: A Search for Meaningful Standards*, 81 Yale L.J. 703, 712–13 (1972) (also noting that many informants provide information only to avoid being prosecuted themselves). Although indispensable, confidential informants are generally regarded as less reliable than ordinary citizens, victims, or law enforcement officers. Under *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), courts reviewing probable cause determinations based on information from confidential informants applied a two prong test, analyzing the informant's basis of knowledge and veracity. An informant's reliability and credibility (i.e., veracity) were traditionally established by providing a judicial officer reviewing a warrant application with sufficient information about the informant's "track record" to permit an independent evaluation of the informant's reliability, through self-verifying details in the informant's story, or through independent police investigation which corroborated material portions

---

**1.** More specifically, defendants argue that:
[T]he informant is never identified.... It is never stated by the affiant as to whether the informant does or does not have a criminal record.... There is an unsubstantiated and wholly unparticularized assertion by the affiant that the informant is known to him and that he has knowledge that the informant has provided reliable information in the past. There is no indication of the context in which any information has been provided, on how many occasion [sic] such information has been provided, whether such information has lead [sic] to arrests or convictions, whether it was relied upon for search warrant affidavits or how long ago such information was provided.... Given the total lack of any corroborative information about the veracity and reliability of the informant, the Defendant asserts that the affidavit is devoid of probable cause.

of the informant's story. The inclusion of admissions against interest in an informant's story also tended to establish the informant's reliability. In *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983), the Supreme Court abandoned the *Aguilar–Spinelli* two prong test, establishing a unitary "totality-of-the-circumstances analysis."

The First Circuit recently applied *Gates* "totality-of-the-circumstances" test to two affidavits which stated that "[t]his informant has proven reliable in the past by supplying information resulting in the arrest of several people for drug related offenses." *United States v. Caggiano*, 899 F.2d 99, 102 n. 2 (1st Cir.1990).[2] Conceding that "the reliability information in the both affidavits is more conclusory than specific" the First Circuit stated that "the reliability of the informants was enhanced by the specificity and details given to [the affiant] of what they saw and heard while they were in defendant's apartment." *Id.* at 102. The affidavit contained no other information bearing on the informants' reliability. As in the instant case, the informants in *Caggiano* told police they had observed drugs at the defendant's residence and heard the defendant discuss the drug transactions. The "specificity and detail[ ]" of the information provided by the confidential informant in the instant case is at least as great as in *Caggiano*. We are therefore constrained to find that Hutchings' conclusory statement that the confidential informant is reliable together with the specific and detailed information provided by that informant provided " 'a substantial basis for concluding that probable cause existed.' " *Caggiano*, 899 F.2d at

103 (quoting *Gates*, 462 U.S. at 238–39, 103 S.Ct. at 2332).[3]

We next examine the defendants' claim that the search warrant failed to establish probable cause because the information in it was "stale." Without citation to authority, defendants argue that the warrant was devoid of probable cause because it was based on observations of drugs that were two weeks, six weeks or six months old. "Whether or not the averments in the affidavit are sufficiently timely to establish probable cause depends on the particular circumstances of the case. Where the information points to illegal activity of a continuous nature, the passage of several months between the observations in the affidavit and issuance of a warrant will not render the information stale." *United States v. Hershenow*, 680 F.2d 847, 853 (1st Cir.1982) (citing *United States v. DiMuro*, 540 F.2d 503, 516 (1st Cir.1976)). *See also United States v. Dauphinee*, 538 F.2d 1, 5 (1st Cir.1976) (month old sighting of hand grenade supports issuance of a warrant). Here the nature of the crime—manufacture of marijuana—and Jean Taylor's prior conviction for marijuana trafficking unmistakably suggest illegal activity of a continuing nature. It is unlikely that two week or six week old sightings are apt to be stale. Furthermore, repeated observations of marijuana cultivation over at least a six month period make it more rather than less likely that marijuana plants would still be found at the Taylor residence when the warrant was executed. Defendants' suggestion that some of the evidence seized—the seedlings—might be transported to another location applies only to a fraction of the plants seized. Certain-

**2.** The affidavits—each of which supported a different search warrant—were identical in substance, though not in form. The second affidavit stated: "This informant has proven reliable in the past by supplying information resulting in the arrests of several people. These arrests were drug related." *Id.*

**3.** *But cf. Gates*, 462 U.S. at 239, 103 S.Ct. at 2333 ("An officer's statement that '[a]ffiants have received reliable information from a credible person and do believe' that heroin is stored in a home is likewise inadequate.... [T]his is a mere conclusory statement that gives the magis-

trate virtually no basis at all for making a judgment regarding probable cause. Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others.").

It should be apparent that Hutchings' affidavit in this case is barely adequate to establish probable cause and certainly should not be regarded as a "model." The affidavit could easily have been made unassailable by simply providing information about the informant's "track record" or through independent investigation.

ly, it does not affect the logical conclusion that the plants embedded around defendants' home would remain there. Furthermore, the sightings of one set of seedlings six months earlier and sightings of a second set of seedlings six weeks before the warrant was issued are a clear indication that the defendants were cultivating marijuana on an ongoing basis. "A drug enterprise involving a network of suppliers, distributors, and customers is not created and then willingly dismantled the next day." *United States v. Moscatiello*, 771 F.2d 589, 597 (1st Cir.1985), *vacated on other grounds sub nom.*, *Carter v. United States*, 476 U.S. 1138, 106 S.Ct. 2241, 90 L.Ed.2d 688 (1986). The information supporting the finding of probable cause cannot be said to be stale.

 Even if this Court were to find that the search warrant was not supported by probable cause, the evidence seized would still be admissible under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). In *Leon* the Supreme Court held that evidence obtained by officers acting in objectively reasonable reliance on a subsequently invalidated search warrant need not be suppressed. *Id.* at 922–24, 104 S.Ct. at 3420–21. Suppression would be appropriate in this case only if the warrant were " 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " *Id.* at 923, 104 S.Ct. at 3421 (quoting *Brown v. Illinois*, 422 U.S. 590, 610–611, 95 S.Ct. 2254, 2265, 45 L.Ed.2d 416 (1975)).[4] Both the issuing state court and this Court have reviewed the affidavit and determined that it adequately establishes probable cause. A police officer is not required to apply more exacting standards than a magistrate or reviewing court. BIDE's reliance was objectively reasonable.

Defendants' suggestion that this Court should ignore *Leon* because the warrant was issued by a state judge rather than a

federal magistrate is unavailing. The First Circuit has unequivocally held that "[a] state court search warrant lawfully obtained in the course of a joint criminal investigation resulting in a federal prosecution is evaluated under federal standards." *United States v. Soule*, 908 F.2d 1032, 1038 (1st Cir.1990) (citing *United States v. Mitro*, 880 F.2d 1480, 1485 (1st Cir.1989). Here, as in *Soule*, there is no evidence that BIDE "acted other than in the interests of furthering the efficient investigation and prosecution of violations of state and federal law as warranted by the fruits of their investigation." *Id.* 908 F.2d at 1038.

Because the evidence defendants seek to suppress was seized pursuant to a search warrant which adequately established probable cause and upon which law enforcement officials reasonably relied, defendants' motion is denied.

SO ORDERED.

---

**4.** Defendants do not argue that suppression is appropriate for any of the other three reasons recognized by the Supreme Court: 1) that the affiant misled the magistrate; 2) that the magistrate wholly abandoned his judicial role; or 3)

that the warrant was so facially deficient that the executing officers could not reasonably presume it to be valid. *Id.* 468 U.S. at 923, 104 S.Ct. at 3421.