**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Donald Lake SIMPSON, Defendant–
Appellant.**

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Rodolfo MOLINA, Jr., Defendant–
Appellant.**

Nos. 92–10155, 92–10158.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 9, 1993.

Decided Nov. 30, 1993.

Chris J. Kimminau, John G. Bogart, Tucson, AZ, for defendants-appellants.

David A. Kern and James D. Whitney, Asst. U.S. Attys., Tucson, AZ, for plaintiff-appellee.

Before: REINHARDT and LEAVY, Circuit Judges, and MERHIGE [*], Senior District Judge.

LEAVY, Circuit Judge:

Donald Lake Simpson (Simpson) and Rodolfo Molina, Jr. (Molina) appeal their convictions and sentences for conspiracy to distribute and to possess with intent to distribute 5

kilograms or more of cocaine in violation of 21 U.S.C. § 846. Simpson also appeals his conviction and sentence for possession of an unregistered firearm in violation of 26 U.S.C. §§ 5861(d) and 5871.

### I. *Conspiracy: Failure to Instruct on Overt Act*

■ With regard to the conspiracy charge against both defendants, the issue presented is whether 21 U.S.C. § 846 requires an allegation in the indictment of an overt act and whether the jury must be instructed that proof of an overt act is required. While the indictment need not contain an allegation of an overt act, proof of such an act is required. *United States v. Shabani*, 993 F.2d 1419 (9th Cir.1993); *see also United States v. McCown*, 711 F.2d 1441 (9th Cir.1983); *United States v. Tavelman*, 650 F.2d 1133 (9th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982).

■ In Molina's case, the government contends that the failure to instruct was harmless in view of Jury Instruction Nos. 10–15 and Molina's defense that his overt acts were done for an innocent purpose. In *Shabani*, we wrote:

> The jurors heard testimony about overt acts. Witnesses said that Shabani drove a truck at least twice to accept drug deliveries. But the jurors did not necessarily have to rely on this evidence to convict of conspiracy as defined in the jury instructions.
>
> We decline to speculate about how the jury might have weighed this evidence if properly instructed. As a result, we cannot say that the instructional error was harmless. To find harmless error, we would have to conclude that "no rational jury could have made [its] findings without also finding the omitted or presumed fact to be true." *We have deemed omission of the overt act element harmless where the jury's determination of guilt on another*

[*] The Honorable Robert R. Merhige, Jr., Senior United States District Judge for the Eastern District of Virginia, sitting by designation.

*substantive count served as the functional equivalent of a finding of an overt act.[1]*
*Id.* at 1422. (Citation omitted; emphasis added.)

Both defendants were acquitted of count II of the indictment charging them with distribution of less than 500 grams of cocaine. This was the only substantive offense with which they were charged. Even if Molina admitted to certain overt acts, the jury need not have relied on those acts to convict him. As in *Shabani*, we cannot say that the instructional error was harmless. Simpson's and Molina's conspiracy convictions are therefore REVERSED.

## II. *Search and Seizure: Plain View*

Simpson contends his conviction for possession of an unregistered firearm—a SGW 5.56 caliber (AR–15) rifle modified to fire in a fully automatic mode—must be reversed because the rifle was first illegally seized, then illegally searched.

Simpson argues the seizure of the rifle exceeded the scope of the search warrant because the warrant did not mention firearms, but instead listed documentary evidence of a narcotics trafficking conspiracy. The Government contends that, under the plain view doctrine, given the breadth of this drug conspiracy and prior conspiracies in which Simpson was involved,[2] the warrant is broad enough to encompass such "drug-related evidence" as the rifle.

■ For the plain view doctrine to apply, two criteria must be met: the initial intrusion must be lawful and the incriminatory nature of the evidence must be immediately apparent to the officers. *Horton v. California*, 496 U.S. 128, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). Simpson does not argue that the initial intrusion was unlawful. As to the second criterion, the warrant encompasses "[i]tems evidencing financial transactions in furtherance of ... trafficking in controlled substances." According to the return, the "AR–15 (Olympic Arms)" rifle at issue was found "standing next to bed and nightstand on north wall of bedroom with fully loaded magazine and 1 round in the chamber." We have held that "evidence in plain view may be seized when the executing officers have 'probable cause' to believe that a nexus existed between the viewed item and criminal activity." *United States v. Washington*, 797 F.2d 1461, 1469 (9th Cir.1986). Because of the close relationship between drugs and firearms in the narcotics trade, *see United States v. Savinovich*, 845 F.2d 834, 837 (9th Cir.), *cert. denied*, 488 U.S. 943, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988), the plain view seizure of firearms as evidence of narcotics offenses has been supported even when firearms are not specifically named in the search warrant. *See United States v. Matthews*, 942 F.2d 779 (10th Cir.1991); *United States v. Smith*, 918 F.2d 1501 (11th Cir.1990), *cert. denied sub nom.; Hicks v. United States*, —— U.S. ——, 112 S.Ct. 151, 116 L.Ed.2d 117 (1991); *United States v. Caggiano*, 899 F.2d 99 (1st Cir.1990). Here, it was reasonable for the investigating officers to infer that the AR–15 rifle was incriminating evidence of a narcotics offense. The fact that Simpson was charged with a firearms offense as a result of the seizure does not alter our analysis. *See Matthews*, 942 F.2d 779; *Caggiano*, 899 F.2d 99; *Smith*, 918 F.2d 1501.

■ Simpson argues the rifle was illegally searched by manipulation of the selector switch, dry firing, internal examination, and test firing. He contends a visual examination of the rifle, which was internally modified, did not suggest that the rifle was an automatic weapon. Thus, it was neither "immediate" nor "apparent" that the rifle was prohibited under 26 U.S.C. § 5861(d) and the search of the rifle was unlawful.

In support of his position, Simpson relies on *United States v. Szymkowiak*, 727 F.2d 95

**1.** *See United States v. Garcia*, 988 F.2d 965 (9th Cir.1993); *United States v. Baldwin*, 987 F.2d 1432, 1438–39 (9th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 2948, 124 L.Ed.2d 696 (1993); *United States v. Harrison–Philpot*, 978 F.2d 1520, 1522 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2392, 124 L.Ed.2d 294 (1993).

**2.** *See United States v. Padilla*, 960 F.2d 854 (9th Cir.1992), *rev'd and remanded*, —— U.S. ——, 113 S.Ct. 1936, 123 L.Ed.2d 635, *on remand*, 993 F.2d 721 (9th Cir.1993).

(6th Cir.1984). In that case, while searching Szymkowiak's apartment pursuant to a valid search warrant for specified items of jewelry and a television set, officers inadvertently found a Colt AR–15 rifle. Unbeknownst to the officers, the rifle had been converted from semiautomatic to full-automatic. To determine whether such a conversion had occurred, an agent of the Bureau of Alcohol, Tobacco, and Firearms (ATF) was asked to come to the site of the search and examine the weapon. The ATF agent stated he could not determine without disassembling the firearms whether they had been illegally adapted for fully automatic performance. However, upon the agent's recommendation, the rifle was seized. In his prosecution for unlawful possession of an unregistered weapon, Szymkowiak moved to suppress the AR–15. The district court denied his motion. The Sixth Circuit reversed, reasoning that, at the time of the seizure, the officers had no reason to believe that the weapon had been converted to full-automatic; thus, the incriminating nature of the rifle was neither immediate nor apparent.

In *Szymkowiak,* the officers lacked probable cause to seize Szymkowiak's weapon because "no 'nexus' whatsoever exist[ed] between the seized weapon and the items particularized in the search warrant." *Id.* at 98. Here, officers reasonably believed a nexus existed between the rifle and narcotics trafficking activities. Once in their possession, the officers were entitled to unload the weapon as a safety precaution. *See United States v. Humphrey,* 759 F.2d 743, 748 (9th Cir. 1985) (limited, protective search for and temporary seizure of guns was justified by security considerations), *cert. denied,* 480 U.S. 917, 107 S.Ct. 1371, 94 L.Ed.2d 686 (1987); *United States v. Pillow,* 842 F.2d 1001, 1004 (8th Cir.1988) (gun that was in plain view was subject to seizure as a reasonable safety precaution); *United States v. Malachesen,* 597 F.2d 1232, 1234–35 (8th Cir.) (temporary seizure and unloading of weapon which did not immediately appear to be incriminating upheld as reasonable safety precaution), *cert. denied,* 444 U.S. 902, 100 S.Ct. 214, 62 L.Ed.2d 139 (1979). We hold that once officers, lawfully present in Simpson's residence and searching for evidence of a drug trafficking operation, legally seized the rifle and lawfully unloaded the weapon as a safety precaution, Simpson no longer had a reasonable expectation of privacy in the internal mechanisms of the rifle sufficient to prevent officers from lawfully searching that weapon by means of manipulation of the selector switch, dry firing, internal examination, and test firing. Accordingly, the district court did not err in denying Simpson's motion to suppress.

III. *Scienter Requirement Under 26 U.S.C. § 5861(d)*

Simpson also argues the district court erred in refusing his proposed Jury Instruction No. 12 because section 5861(d) contains a scienter element. Proposed Jury Instruction No. 12 reads:

It is not enough for the Government to prove that Mr. Simpson knowingly possessed a gun. In order to prove a violation of 26 U.S.C. § 5861(d), the government must prove, beyond a reasonable doubt, that the defendant possessed a weapon which he knew was a machinegun as defined by the statute.

The government argues that Instruction No. 25, together with Instruction No. 26 defining the term "machine gun," and Instruction No. 27 defining the "knowing" doing of an act were sufficient. Instruction No. 25 reads:

In order for the defendant to be found guilty of possession of an unregistered firearm in violation of Section 5861(d) of Title 26 of the United States Code, as charged in Count 4 of the indictment, the government must prove the following elements:

First, the defendant knowingly received or possessed a machinegun;

Second, the machinegun was not registered to the defendant in the National Firearms Registration and Transfer Record.

■■ We review the issue of whether a jury instruction misstates elements of a statutory crime *de novo. United States v. Johnson,* 956 F.2d 197, 199 (9th Cir.1992). The district court's denial of a proposed jury instruction is also reviewed *de novo. See Unit-*

*ed States v. Streit,* 962 F.2d 894, 897 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 431, 121 L.Ed.2d 352 (1992).

 In support of his argument that the district court's instructions were insufficient, Simpson relies upon *United States v. O'Mara,* 963 F.2d 1288 (9th Cir.1992). In that case, we stated:

> Where "there were no external indications on the weapon that indicate it is subject to regulation," the district court must *expressly instruct* the jury that the government must prove the defendant "knows that he is dealing with a dangerous device of such a type as would alert one to a likelihood of regulation."

*Id.* at 1290 (quoting *Herbert,* 698 F.2d at 986). This statement was based, in part, on our decision in *United States v. Herbert,* 698 F.2d 981 (9th Cir.), *cert. denied,* 464 U.S. 821, 104 S.Ct. 87, 78 L.Ed.2d 95 (1983), another case upon which Simpson relies.

In *Herbert,* the district court gave an instruction similar to Jury Instruction No. 25 in that it set forth the elements of the crime of illegal possession or transfer of an unregistered weapon as "(1) knowing possession [or transfer] of a machine gun and (2) that such machine gun was unregistered." *Id.* at 986. However, unlike Simpson, Herbert did not object to this instruction: Rather, he objected to the district court's further instruction that

> [t]he mere possession, transfer or making of a firearm which is required to be registered and has not been is a violation of the laws of the United States. It is not necessary for the government to prove that the defendant knew that the weapon was a firearm within the meaning of the statute or that he knew that registration was required. It is sufficient if you find beyond reasonable doubt that he knowingly possessed, transferred and/or made it.

*Id.* We found this instruction insufficient, reasoning that "[i]f the law was as stated in this instruction, then any person who possessed an internally modified weapon with absolutely no knowledge or method of verification of the modification would be in violation of the law." *Id.* at 986–87.

Unlike the instructions in *Herbert,* the instructions here required that the jury find Simpson "knowingly received or possessed" a machine gun, which it defined as a "weapon which shoots, is designed to shoot, or can be readily restored to shoot automatically more than one shot, without manual reloading, by a single function of the trigger." Thus, the jury had to find that Simpson knew he was dealing with "a dangerous device of such type as would alert one to the likelihood of regulation." *O'Mara,* 963 F.2d at 1290 (quoting *Herbert,* 698 F.2d at 986). The district court did not err in rejecting Simpson's proposed Jury Instruction No. 12 nor in giving Jury Instruction Nos. 25–27.

## CONCLUSION

Simpson's and Molina's conspiracy convictions are REVERSED and REMANDED for a new trial. Simpson's firearms conviction is AFFIRMED.