USCA1 Opinion

 

 May 21, 1993 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 93-1018 UNITED STATES OF AMERICA, Appellee, v. RICKIE ALBERT SCALIA, Defendant, Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MAINE [Hon. D. Brock Hornby, U.S. District Judge] ___________________ ____________________ Before Selya, Circuit Judge, _____________ Friedman,* Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ____________________ James Michael Merberg with whom Susan J. Naughton was on brief ______________________ _________________ for appellant. F. Mark Terison, Assistant United States Attorney, with whom ________________ Richard S. Cohen, United States Attorney, and Jonathan R. Chapman, ________________ ____________________ Assistant United States Attorney, were on brief for appellee. ____________________ May 21, 1993 ____________________ __________________ *Of the Federal Circuit, sitting by designation. CYR, Circuit Judge. Appellant Rickie Albert Scalia CYR, Circuit Judge. _____________ entered a conditional guilty plea, see Fed. R. Crim. P. 11(a)(2), ___ following the district court's denial of his motion to suppress evidence seized from his residence pursuant to a search warrant. He now appeals, see id., his conviction for unlawful "manufac- ___ ___ ture" of marijuana, 21 U.S.C. 841(a)(1); 18 U.S.C. 2, and a criminal forfeiture conviction under 21 U.S.C. 853. Scalia also challenges the mandatory minimum five-year sentence imposed pursuant to 21 U.S.C. 841(b)(1)(B)(vii) (minimum sentence of five years for "manufacture" of one hundred or more marijuana plants). Scalia contends that the affidavit supporting the search warrant application was insufficient to establish probable cause, and that the district court lacked sufficient reliable evidence on which to find that more than one hundred marijuana plants were seized from his residence. Finding no error, we affirm. A. Probable Cause A. Probable Cause ______________ On February 14, 1992, Agent Kenneth MacMaster of the Maine Bureau of Intergovernmental Drug Enforcement (BIDE) applied for a state court warrant to search appellant's residence for marijuana and related paraphernalia. MacMaster's supporting affidavit relied upon, inter alia, information provided by a _____ ____ confidential informant described as a "young concerned citizen." The informant told MacMaster that he had visited the Scalia residence on numerous occasions and as recently as ten days before coming to MacMaster. The informant said that he had observed two marijuana plants a foot tall in appellant's living room, five eighteen-inch plants in the bedroom, and from forty- five to fifty plants of various sizes in a basement walk-in cooler. The informant told MacMaster that s/he was able to recognize the plants because s/he had "received instruction from his/her school concerning various drugs," and that some of the informant's family and friends were casual marijuana users. The marijuana plants in the walk-in cooler were being grown under artificial lights operated by switches installed outside the padlocked cooler door. The informant observed that other rooms in appellant's residence and rooms in an adjacent horse barn were padlocked as well, and that Scalia kept several shotguns and a handgun on the premises. On at least four occasions, the infor- mant observed Scalia selling marijuana at either his residence or his business premises. The primary contention Scalia makes on appeal is that the MacMaster affidavit did not establish the reliability and veracity of the informant because (1) MacMaster did not explicit- ly attest that the informant had no prior criminal record; (2) _____ the informant apparently had not provided information to law enforcement officials previously; and (3) MacMaster did not 4 attempt to corroborate the informant's tip through follow-up surveillance efforts at appellant's residence.1 We review the issuance of a search warrant with "great deference," United States v. Ciampa, 793 F.2d 19, 22 (1st Cir. _____________ ______ 1986), to verify that there existed a "substantial basis" for the judicial officer's common-sense determination that, "given all the circumstances set forth in the affidavit . . . , including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there [was] a fair probability that contra- band or evidence of a crime [would] be found in a particular place." United States v. Caggiano, 899 F.2d 99, 102 (1st Cir. _____________ ________ 1990) (quoting Illinois v. Gates, 462 U.S. 213, 238-39 (1983)). ________ _____ The MacMaster affidavit stated that the informant was "not currently facing any criminal or juvenile charges nor is _________ he/she under suspicion for any wrongdoing." (Emphasis added.) Appellant first suggests that MacMaster's use of the word "cur- rently" was deliberate wordplay a statement which was techni- cally true but designed to camouflage the fact that the informant had confronted criminal or juvenile charges in the past. Gener- __ ___ ____ ____________________ 1Appellant likewise contends that the affidavit heavily depended on "stale" evidence, namely DEA and BIDE debriefing interviews with appellant's alleged associates implicating appellant in similar drug trafficking activities as far back as 1986-87. As the recent informa- tion provided by the informant was sufficient to establish probable cause, we need not address the "staleness" claim. See United States ___ _____________ v. Bucuvalas, 970 F.2d 937, 940 (1st Cir. 1992) ("Staleness does not _________ undermine the probable cause determination if the affidavit contains information that updates, substantiates, or corroborates the stale material."), cert. denied, 113 S. Ct. 1382 (1993). _____ ______ 5 ally speaking, the representations contained in a search warrant affidavit are presumed valid and truthful. United States v. ______________ Spinosa, 982 F.2d 620, 626 (1st Cir. 1992). To mount an effec- _______ tive challenge based on an alleged use of deliberate or reckless falsehoods by an affiant, a defendant must request an evidentiary hearing pursuant to Franks v. Delaware, 438 U.S. 154 (1978). A ______ ________ Franks hearing is required only if the defendant makes a "sub- ______ stantial preliminary showing (1) that a false statement in the affidavit has been made knowingly and intentionally, and (2) that the false statement is necessary for the finding of probable cause." United States v. Paradis, 802 F.2d 553, 558 (1st Cir. _____________ _______ 1986). The defendant's offer of proof must be "more than con- clusory" and should be supported by "[a]ffidavits or sworn or otherwise reliable statements of witnesses." Franks, 438 U.S. at ______ 171. A comparable showing is required if the defendant would establish that technically accurate statements by an affiant have been rendered misleading by material omissions. See United ___ ______ States v. Rumney, 867 F.2d 714, 720 (1st Cir.), cert. denied, 491 ______ ______ _____ ______ U.S. 908 (1989). Appellant neither requested a Franks hearing nor ______ attempted an offer of proof relating to any material omission from the MacMaster affidavit. Moreover, on appeal there has been no showing that the informant ever had a criminal or juvenile record, or any other involvement with the law, which might 6 undermine the reliability of the affidavit. We therefore find no basis for concluding that the informant had a prior record. Next, appellant suggests that the reliability of first- time information provided by a "concerned citizen" should be considered inherently suspect, since law enforcement officials can have had no "track record" against which to assess the informant's competence to convey accurate intelligence relating to criminal activities, or the trustworthiness of the informant's motives in volunteering information. We disagree. "[A] warrant affidavit [need not contain] an averment of previous reliability, the appropriate inquiry always being whether the informant's present information is truthful or reliable." United States v. _______ ___________ _____________ Cochrane, 896 F.2d 635, 641 (1st Cir.) (citing United States v. ________ ______________ Harris, 403 U.S. 573, 581-82 (1971)) (emphasis added), cert. ______ _____ denied, 496 U.S. 929 (1990). In the absence of a prior record of ______ reliability, we have recognized that, where the informant was "not a professional . . . but a private citizen with no known ___ _ ____________ __ _____ criminal record or other criminal contacts, who came forward on ________ ______ his own . . . [,] the informant's story may be more easily accepted . . . ." United States v. Campbell, 732 F.2d 1017, 1019 _____________ ________ (1st Cir. 1984) (citing United States v. Burke, 517 F.2d 377, ______________ _____ 379-81 (1st Cir. 1975)) (emphasis added). Since there is no evidence that the informant who came to MacMaster either had a criminal record, or was suspected of current criminal activity, a 7 neutral judicial officer fairly could find that the informant was a "private citizen" who volunteered the information to MacMaster. Furthermore, "an informant's reliability need not invariably be demonstrated through the detailed narration of the information previously furnished to law enforcement . . . . __________ _________ Rather, the affidavit may disclose an adequate basis for evaluat- ing the informant's veracity through the very specificity and ___________ detail with which it relates the informant's first-hand descrip- ______ tion of the place to be searched or the items to be seized." United States v. Taylor, 985 F.2d 3, 6 (1st Cir. 1993) (citing _____________ ______ Caggiano, 899 F.2d at 102-03) (emphasis added); see also Coch- ________ ___ ____ _____ rane, 896 F.2d at 641 ("[A]n important indicia (sic) of reliabil- ____ ity is the fact that the informant's knowledge was based upon personal observation rather than hearsay."). As is apparent from ________ ___________ our recitation of the confidential information provided to MacMaster, the particularity of the informant's description of the interior and contents of the residence (e.g., padlocked ____ doors, multiple firearms), the location, size, and number of marijuana plants, the marijuana growing apparatus (e.g., basement ____ cooler, artificial lights), and the illegal marijuana sales conducted by appellant inside the search premises, provided considerable intrinsic support for the informant's capacity to 8 convey reliable intelligence relating to the criminal activity attested to in the affidavit.2 Finally, appellant argues that MacMaster should have corroborated the informant's tip before applying for a search warrant, preferably through surveillance of Scalia's residence. Corroboration may take various forms, however, and we have never intimated that surveillance is mandatory. See, e.g., Taylor, 985 ___ ____ ______ F.2d at 6 (finding probable cause where corroboration of infor- mant's tip did not go beyond check of target's criminal record). The confidential informant's tip to MacMaster comported with information received from other sources, including previous BIDE debriefing interviews with several of Scalia's former associates, see supra note 1, as well as informal complaints lodged with the ___ _____ Maine State Police by eight unidentified citizens expressing concerns about Scalia's drug trafficking activity. The combined force of the informant's detailed tip, MacMaster's expert assessment, and the corroborative police reports provided substantial support for a common-sense determi- nation by the issuing judge that there existed a fair probability ____________________ 2MacMaster, a BIDE agent for thirteen years, had participated in more than eighteen hundred drug investigations. He attested both to the informant's demeanor during the interview and to the authenticity of the informant's description of the suspected criminal activity ("impressed by the honesty of this person and his/her ability to describe events which he/she had seen"). See, e.g., Taylor, 985 F.2d ___ ____ ______ at 6 ("[T]he issuing magistrate properly may credit the experience and pertinent expertise of a law enforcement affiant in evaluating the authenticity of the informant's description of the target's modus operandi."). 9 that marijuana and related paraphernalia would be found in appellant's residence. B. Mandatory Minimum Sentence B. Mandatory Minimum Sentence __________________________ A defendant convicted under 21 U.S.C. 841(a)(1) is subject to a mandatory five-year minimum sentence if the court finds by a preponderance of the evidence that the defendant manufactured or possessed "100 or more marijuana plants regard- less of weight." 21 U.S.C. 841(b)(1)(B)(vii). See United ___ ______ States v. McMahon, 935 F.2d 397, 400 (1st Cir.), cert. denied, ______ _______ _____ ______ 112 S. Ct. 272 (1991). Were it not for the mandatory statutory minimum, appellant would have been exposed to a 46-to-57 month guideline sentencing range (Level 23, Criminal History Category I), based on the total weight of the marijuana plants (111.8 kilograms) seized at his residence. See U.S.S.G. 2D1.1(c)(9) ___ (100 KG-400 KG marijuana; level 26); id. 3E1.1(a), (b) (3-level ___ reduction for acceptance of responsibility); id. 5G1.1(b) ___ ("Where a statutorily required minimum sentence is greater than the maximum of the applicable guideline range, the statutorily required minimum sentence shall be the guideline sentence."). At the time the search warrant was executed, an agent for the Maine Drug Enforcement Agency, Bruce Bristow, visually examined the marijuana plants found on the premises. Based on his education and experience, Bristow concluded that all 112 plants were marijuana. He randomly selected fifteen plants, and 10 submitted these representative plants (ranging from one and one- half inches to two feet tall) for chemical analysis.3 The chemical analysis confirmed that all fifteen samples were mari- juana plants. Following an evidentiary hearing, the district court found that all 112 plants were marijuana. Scalia was sentenced to the mandatory minimum five-year term. The district court's drug-quantity finding was based on four factors: (1) Bristow's trained visual identification of all plants seized at the search scene as marijuana; (2) the fact that all the plants were seized contemporaneously from the same location; (3) the positive chemical analysis on all fifteen sample plants tested, and (4) the absence of evidence that appellant was growing anything other than marijuana. Appellant challenges only the first factor relied on by the district court, by attempting to undercut the reliability of Bristow's visual identification. Appellant argues that Bristow conceded that at least two other plant species which grow in Maine look like marijuana when they are only one and one-half inches tall. Appellant's claim fails for two reasons. First, while the record reflects that Bristow testified that two marijuana look-alikes do grow in Maine, he never stated ____________________ 3Bristow seized 67 plants from the bedroom, measuring from 1 1/2 inches to 10 inches in height, and 45 plants from the basement cooler, all measuring 24 inches "more or less." Bristow then divided the plants into three groups (i.e., 1 1/2 inch, 10 inch, and 24 inch) and took five samples from each group. 11 that his training and experience left him incapable of distin- guishing these look-alikes from marijuana.4 Rather, Bristow stood by his visual identification. Cf. United States v. Maceo, ___ _____________ _____ 873 F.2d 1, 6 (1st Cir.) (extrapolations of drug quantity involve issues of credibility and weight of evidence reserved for trier of fact), cert. denied, 493 U.S. 840 (1989); United States v. _____ ______ _____________ Echeverri, 982 F.2d 675, 677 (1st Cir. 1993) (qualification of _________ "expert" witness reviewed only for manifest abuse of discretion). Second, the other factors relied on by the district court strongly support its drug-quantity determination as well. See United States v. Akitoye, 923 F.2d 221, 227 (1st Cir. 1991) ___ _____________ _______ (factual findings on drug quantity reviewed for "clear error"). "Although the sentencing court must 'err on the side of cau- tion[,]'" United States v. Barnett, F.2d , [Nos. 91- _____________ _______ ___ ___ ___ ____________________ 4The relevant exchange was as follows: Counsel: Based on your training and experience, has it been brought to your attention that there are two other plant-like substances that exhibit similar characteris- tics to the marijuana plant? Bristow: Yes. Counsel: How many different ones to your knowledge? Bristow: That I've run across in the State of Maine, two. There may be more, two that I'm very familiar with. ___ ____ ___ ____ ________ ____ Counsel: All right. And part of your training is to attempt to differentiate between these similar plants and the ones which are in fact marijuana? Bristow: Yes, sir. 12 1890, 91-1891, 92-1778, slip op. at 12 (1st Cir. Mar. 29, 1993)] (approximating producible quantity of controlled substance based in part on amount of precursor chemicals seized) (quoting United ______ States v. Sklar, 920 F.2d 107, 113 (1st Cir. 1990)), drug-quanti- ______ _____ ty estimations need not be statistically or scientifically precise. See U.S.S.G. 6A1.3 ("In resolving any reasonable ___ dispute concerning a factor important to the sentencing determi- nation, the court may consider relevant information without regard to its admissibility under the rules of evidence applica- ble at trial, provided that the information has sufficient __________ indicia of reliability to support its probable accuracy.") _______ __ ___________ __ _______ ___ ________ ________ (emphasis added); United States v. Uwaeme, 975 F.2d 1016, 1018 _____________ ______ (4th Cir. 1992) (noting that drug-quantity estimations may be based on hearsay, nonscientific testimony, defendant's notebook entries, street values of drugs equivalent to money seized from defendant, or on extrapolations of potential drug output from seized components). More to the present point, courts have endorsed statis- tically based drug-quantity extrapolations predicated on random test samples in circumstances where the government was able to demonstrate an "adequate basis in fact for the extrapolation and that the quantity was determined in a manner consistent with the accepted standards of [reasonable] reliability." United States ______________ v. McCutchen, F.2d , (3d Cir. 1993) [No. 92-1536, _________ ____ _____ ____ 1993 U.S. App. LEXIS 7651, at 11 (3d Cir. Apr. 13, 1993)]; United ______ 13 States v. Pirre, 927 F.2d 694, 697 (2d Cir. 1991) ("It is suffi- ______ _____ cient for the government to show that its method of estimating the total [amount of drugs] is grounded in fact and is carried out in a manner consistent with accepted standards of reliabili- ty."); see also Barnett, F.2d at [Nos. 91-1890, 91-1891, ___ ____ _______ ___ ___ 92-1778, slip op. at 13] ("We must determine whether the govern- ment presented sufficient reliable evidence to permit the court reasonably to conclude that appellants were responsible for a quantity of drugs at least equal to the quantity threshold for the assigned base offense level."). For example, sufficient indicia of reliability may be found where a preponderance of the evidence demonstrates that (1) a proper "random" selection procedure was employed; (2) the chemical testing method conformed with an accepted methodology; (3) the tested and untested samples were sufficiently similar in physical appearance; and (4) the tested and untested samples were contemporaneously seized at the search scene. See McCutchen, F.2d at [No. 92-1536, 1993 ___ _________ ___ ____ U.S. App. LEXIS 7651, at 11-12 (3d Cir. Apr. 13, 1993)]. In sum, the overall margin of reliability in a drug-quantity approxi- _______ ______ __ ___________ mation must be adequate to afford reasonable assurance that the defendant is not subjected to a guideline sentence or a mandated minimum sentence greater than warranted by the reliable evi- 14 dence.5 Given the relatively light burden of proof, the reason- able reliability of the drug-quantity sampling and extrapolation procedures employed by the government, and the utter absence of countervailing drug-quantity evidence, we affirm the district court's findings. Affirmed. Affirmed. ________ ____________________ 5A videotape of Bristow's "random" plant selection procedure was received in evidence. Unlike the drug weight extrapolation in ______ McCutchen, chemical analysis of the fifteen sample plants selected by _________ Bristow permitted a straightforward extrapolation as to the total number of plants. The plants, all exhibiting the telltale saw-toothed ______ leaf structure, were seized on the same day from the same residence, giving rise to a "strong inference" that only marijuana plants were seized. McCutchen, F.2d at [No. 92-1536, 1993 U.S. App. _________ ____ _____ LEXIS 7651, at 13 (Apr. 13, 1993)]. Finally, more than twelve of the seized plants (i.e., over 10% of the total) would have had to test ____ negative in order to bring the total below the 100-plant cutoff required to trigger the mandatory five-year minimum sentence under 21 U.S.C. 841(b)(1)(B)(vii). Yet all fifteen random samples tested positive for marijuana. 15