**UNITED STATES of America,**
**Plaintiff,**

v.

**Derek CAPOZZI, Defendant.**

**Criminal No: 98–10087–PBS.**

United States District Court,
D. Massachusetts.

Oct. 22, 1999.

Christopher F. Bator, United States Attorney's Office, Boston, MA, for U.S.

Joan M. Griffin, Casner & Edwards, Matthew A. Kamholtz, Segal & Feinberg, Peter B. Krupp, Lurie & Krupp, LLP, Boston, MA, for Derek Capozzi.

Thomas C. Horgan, Boston, MA, for Jason Stone.

## MEMORANDUM AND ORDER

SARIS, District Judge.

After six days of evidentiary hearings on defendant's motion for a hearing under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Court rules on defendant's pending motions as follows. Because the trial is imminent, the Court is addressing the issues succinctly. A more detailed opinion will follow.

1. Defendant originally pressed for a *Franks* hearing on the ground that the police had fabricated an anonymous tipster. After evaluating the testimony of Salem Police Detective Thomas Griffin who testified he received the telephonic tip, Salem Detective Harry Rocheville, who said he was present when Griffin received the call, State Trooper Robert Irwin, the affiant, Trooper Michael Cronin, Salem Detective Conrad Prosniewski, and F.B.I. Special Agent Gerald B. Mohan, together with the contemporaneous records, (see Government's Exh. 2; Defendant's Exh. 25), the Court finds that the police did not intentionally or recklessly provide material false information with respect to the substance of the tip or the existence of the tipster. Specifically, although I found Santina Luca to be a credible (albeit timorous) witness in many respects, her testimony, even if fully believed, does not preclude the existence of an anonymous tipster. I find that there was an anonymous tipster.

While I find that there was an anonymous tipster, one element of the tip gives me some concern. According to Sergeant Griffin of the Salem Police Department, the tipster relayed information she

overheard about a gun *and a knife* used by Mr. Capozzi in a Peabody Assault. (See Defendant's Exh. 25) Detective Rocheville testified that he made Trooper Irwin aware of the knife component of the tip. Troopers Irwin and Cronin testified the focus of the discussion was a gun, and they do not remember being told the anonymous informant also mentioned a knife. Trooper Irwin's affidavit did not include mention of the knife in his affidavit seeking the search warrant. While credibility disputes of this kind are difficult to resolve, I find that it is more likely true that Rocheville mentioned a gun and knife to either Cronin or Irwin (or both) because he described the tip that way to Special Agent Mohan. This was a situation in which several police officers were sharing information and acting quickly in order to investigate the crime and get a search warrant. The affiant, Trooper Irwin, was typing the affidavit as he received the information on a Friday afternoon. While I find Trooper Irwin was negligent in failing to transcribe precisely what Rocheville told him in this respect, I do not find that this was an intentional or reckless omission. *See United States v. Owens,* 167 F.3d 739, 745 (1st Cir.1999) (denying defendant's claim where officer's acts amounted to no more than negligence, since "[a]llegations of negligence or innocent mistake are insufficient." (citing *Franks,* 438 U.S. at 171, 98 S.Ct. 2674)).

■ The other alleged errors deserve only passing discussion. Defendant complains of inappropriate quotation marks and an inaccurate use of verb tenses. These are the hypertechnical criticisms which the courts have rejected as a basis for a *Franks* hearing. Any argument that such drafting errors were material is far-fetched. The other alleged omission concerns the tipster's statement that she was a source for Salem Detective Conrad Prosniewski. Irwin testified he was unaware of this fact. Rocheville remembers telling him. However, this omission is immaterial. If anything, the self-description as a former source might have inappropriately heightened the tipster's credibility. There is no evidence Irwin knew that Prosniewski could not identify the anonymous tipster.

2. The Court denies defendant's renewed motion to expand the *Franks* hearing because he has not made the required substantial threshold showing. "*Franks* provides for...a hearing where a defendant makes 'allegations of deliberate falsehood or of reckless disregard for the truth...accompanied by an offer of proof.'" *United States v. Procopio,* 88 F.3d 21, 26 (1st Cir.1996) (quoting *Franks,* 438 U.S. at 171, 98 S.Ct. 2674).

■ The two primary areas which defendant challenges are Irwin's failure to disclose the existence of an initial search prior to the consent search, and the alleged misrepresentation as to the scope of the search of the grounds between the motel and the used car building. However, there is no threshold showing that Irwin knew about the initial search or that it was material. The evidence is that he was not present for that search, and it was limited in scope. Moreover, there was an adequate description of the second consent search, which renders the initial search immaterial. Defendant has presented no evidence to suggest that the description of the search of the grounds and the waterway was intentionally or recklessly misleading. It must be remembered that the Peabody District Court where the search warrant was issued was a stone throw away from the motel and car dealership at issue.

■ 3. After a review of the affidavit and case law, I conclude that there was inadequate probable cause for the issuance of the search warrant, although I think it is a close call. Probable cause for the issuance of a search warrant exists where "given all the circumstances set forth in the affidavit...there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v.*

*Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983). "A probable cause determination is fundamentally a fact-specific inquiry." *United States v. Khounsavanh,* 113 F.3d 279, 285 (1st Cir. 1997). Reviewing courts are directed to grant "great deference" to a magistrate's evaluation of supporting affidavits. *United States v. Jewell,* 60 F.3d 20, 22 (1st Cir.1995). Reversal is appropriate only when a court concludes that no "substantial basis" exists for concluding that probable cause existed. *Gates,* 462 U.S. at 238–39, 103 S.Ct. 2317; *Procopio,* 88 F.3d at 25.

■■■ An anonymous tip, standing alone, is generally insufficient to establish probable cause. *See Gates,* 462 U.S. at 227, 103 S.Ct. 2317. Absent information about a tipster's reliability or basis for obtaining her information, some corroboration is required. Under *Gates,* "[i]t is enough, for purposes of assessing probable cause, that corroboration through other sources of information reduce(s) the chances of a reckless or prevaricating tale..." *Id.* at 244–45, 103 S.Ct. 2317. When some partial corroboration of an informant's tip takes place, the inquiry is "when does verification of part of the informant's story make it sufficiently likely that the crucial part of the informant's story...is true." *Khounsavanh,* 113 F.3d at 284.

■■■ Against this backdrop, the Court examines Trooper Irwin's affidavit. Although the affidavit did contain multiple hearsay, this alone does not eviscerate probable cause if, through corroboration, an affidavit demonstrates sufficient indicia of reliability surrounding the tip. *See Jones v. United States,* 362 U.S. 257, 269, 80 S.Ct. 725, 735, 4 L.Ed.2d 697 (1960) (holding that affidavits containing hearsay not insufficient if a substantial basis exists for crediting hearsay); *Procopio,* 88 F.3d at 26 (finding sufficient corroboration to support probable cause despite the fact that informant's tip contained multi-level hearsay). In several cases, the First Cir-

cuit has considered an informant's proven record of reliability as boosting the strength of a tip. *See United States v. Diallo,* 29 F.3d 23, (upholding probable cause finding where informant known to police as reliable); *United States v. Schaefer,* 87 F.3d 562, 566 (1st Cir.1996) (affirming that informant's prior record of reliability may be sufficient to "bulwark an informant's report.")

An anonymous tip, however, presents special problems. In this context, the First Circuit has looked to other indicia of reliability, such as the fact that the tipster's information was "based on personal knowledge, rather than hearsay." *United States v. Scalia,* 993 F.2d 984, 987 (1st Cir.1993) (crediting anonymous tip due to its detail, the fact that tipster had first-hand knowledge, and where other corroboration existed); *United States v. Caggiano,* 899 F.2d 99, 102–103 (1st Cir.1990) (finding tip more reliable where details derived from personal observation and not hearsay). However, where (as here) the tipster is anonymous, and the tip is based on hearsay, rather than firsthand knowledge, the need for further corroboration is paramount.

■■■ Moreover, in this context, the police must corroborate more than innocent details. *See Khounsavanh,* 113 F.3d at 286 (finding corroboration supplied by a controlled buy supported probable cause, where corroboration of "innocent facts" would not have); *United States v. Wilhelm,* 86 F.3d 116, 120–121 (4th Cir.1996) (finding no probable cause where officers corroborated only "innocent details" supplied by unknown tipster); *United States v. Clark,* 31 F.3d 831, 835 (9th Cir.1994), *cert denied,* 513 U.S. 1119, 115 S.Ct. 920, 130 L.Ed.2d 800 (1995) (stating that "[m]ere confirmation of innocent static details in an anonymous tip does not constitute corroboration."); *United States v. Gibson,* 928 F.2d 250, 253 (8th Cir.1991) (finding, on facts of case, that corrobora-

tion of innocent details insufficient to establish probable cause).

██ Here, the twofold corroboration provided by the police is that the two women, Santina Luca and Erica Murphy, who were present during the search, were also present in the Peabody District Court at exactly the same time and place described by the tipster, and the fact that the police had attempted to search other possible locations for the gun in vain. While the question is close, in view of the vigorous corroboration requirements for anonymous tips, I find that this is insufficient corroboration. Because Trooper Irwin's affidavit confirmed only innocent details in the anonymous tip, that Ms. Luca and Ms. Murphy were present in court that day at the arraignment, I conclude that these factors do not constitute a "substantial basis" on which a magistrate could find probable cause to reenter the motel room.

██ However, under the good faith exception presented in *United States v. Leon,* the search survives. *Leon* holds that where officers act in the objectively reasonable belief that their conduct does not violate the Fourth Amendment, the exclusionary rule should not be applied to suppress evidence. *See Leon,* 468 U.S. 897, 919, 104 S.Ct. 3405, 3419, 82 L.Ed.2d 677 (1984) (refusing to apply exclusionary rule where doing so would not serve underlying purpose of deterring police misconduct).

The First Circuit has recently discussed the four exclusions from the *Leon* good faith doctrine. Application of the *Leon* good faith exception is inappropriate: "1) 'when the magistrate...was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth;' 2) 'where the issuing magistrate wholly abandoned his [detached and neutral] judicial role;' 3) where the affidavit is 'so lacking in probable cause as to render official belief in its existence entirely unreasonable;' and 4) where a warrant is 'so

facially deficient—i.e. in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *See Owens,* 167 F.3d at 745. Only the first and third exclusions are in any way applicable to this case.

As to the first exclusion, this is essentially a formulation of the *Franks* doctrine, and as I concluded above, defendant has not shown that there were intentional or reckless falsehoods or omissions in this case.

As to the third exclusion, the affidavit in this case was not so lacking in probable cause as to make the officers' reliance upon it objectively unreasonable. While after careful consideration I find that the anonymous tip was not sufficiently corroborated to establish probable cause, Trooper Irwin did attempt to corroborate the existence of the tipster, and acted in good faith in seeking and carrying out the warrant. Trooper Irwin had learned through his discussion with Detective Murphy that the two women were in court on the day the tipster claimed to have overheard the discussion regarding the location of the weapons. Detective Murphy also told Trooper Irwin that these were the same women who were present during the consent search of the motel room. As additional evidence of good faith, Trooper Irwin contacted the assistant district attorney before seeking a warrant. He then appeared before a magistrate and presented circumstances and information which he reasonably believed supported a probable cause finding. Trooper Irwin sought a search warrant rather than simply re-entering the motel room under the prior consent. Also, the police had done an extensive search of other likely locations but had failed to find the gun. One logical conclusion would be that they missed it during the motel search. In light of these facts, I find that the officers' reliance on the search warrant was objectively reasonable. Since none of the exclusions under

the *Leon* good faith doctrine applies, I deny the motion to suppress with respect to the gun.

4. I grant the defendant's motion to sever Counts 3 and 4 from Counts 5 and 6 pursuant to Fed.R.Crim.P. 8(a) and Fed. R.Crim.P. 14. I deny the motion to sever Count 1, except to the extent stated in this section. The indictment charges Mr. Capozzi with violations of: 18 U.S.C. § 922(g)(1), felon in possession of a firearm and ammunition, stemming from the incidents in Haverhill (on November 29, 1997), Beverly (on January 22, 1998), and Peabody (on February 18, 1998) (Count 1); 18 U.S.C. § 1951(a), attempted extortion affecting commerce, stemming from the Peabody incident (Count 3); 18 U.S.C. § 924(c), use of a firearm during a crime of violence, stemming from the Peabody incident (Count 4); 18 U.S.C. § 2113(d), armed bank robbery, stemming from the Beverly incident (Count 5); and 18 U.S.C. § 924(c), use of a firearm during a crime of violence, stemming from the Beverly bank robbery (Count 6).

Defendant first argues that joinder of these charges was improper under Fed.R.Crim.P. 8(a). Defendant further argues that a trial on all three incidents would have an unfair prejudicial spillover effect, and that severance is therefore proper under Fed.R.Crim.P. 14.[1] The government argues that it will be inefficient to try the incidents separately because a trial of the Haverhill and Beverly incidents will require common evidence regarding the Peabody extortion charge (where several eyewitnesses place defendant with the gun, later found in his motel room). The government further argues that the Beverly and Peabody incidents are of the "same or similar character," thus satisfying one of the prongs of Rule 8(a). It also insists it has the right to present evidence on the felon-in-possession charge, as indicted. Defendant has agreed

to waive any double jeopardy objections to trying the felon-in-possession with respect to Haverhill and Beverly separately.

After reviewing the case law on joinder of counts, I find that the three incidents at issue here are simply too dissimilar to fit the requirements of Rule 8(a), and must be severed. We will proceed to trial first on the Peabody extortion charge (Count 3), the related § 924(c) charge (Count 4), and, if the government chooses, the § 922(g) felon in possession charge (Count 1) as it relates to the Peabody incident.

Pursuant to Rule 8(a), "Two or more offenses may be charged in the same indictment...if the offenses charged...are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). The First Circuit has enunciated what it considers the most relevant factors for district courts to look to in determining whether joinder was proper under Rule 8(a): "whether the charges are laid under the same statute, whether they involve similar victims, locations, or modes of operation, and the time frame in which the charged conduct occurred." *United States v. Taylor*, 54 F.3d 967, 973 (1st Cir.1995) (finding joinder of two bank robbery charges proper where brought under same statute, involved same type of victims, were in same locale, and happened on successive days). *See also United States v. Edgar*, 82 F.3d 499, 503–504 (1st Cir.1996) (finding joinder of bankruptcy fraud charges to other fraud charges improper where counts involved different witnesses, different victims, different locations, different modes of operation, and were brought under different statutes).

Although "Rule 8(a)'s joinder provision is generously construed in favor of joinder," the First Circuit has stated that

---

1. It should be noted, however, that should the need to try the Haverhill incident be obviated by a conviction on the other incidents, this

Court is not precluded from considering the Haverhill incident (if proven) as relevant conduct at sentencing.

"Rule 8(a) does forbid joinder unless the counts meet one of the conditions...and those conditions, although phrased in general terms, are not infinitely elastic." *United States v. Randazzo*, 80 F.3d 623, 627 (1st Cir.1996) (finding that claims relating to illegal sale and processing of shrimp were too dissimilar from claims of tax fraud to warrant joinder). In *Randazzo*, despite the fact that evidence on the two sets of charges overlapped, the court stated, "[W]e agree that the extent of common evidence plays a role in implementing Rule 8(a)...But Congress did not provide for joinder for unrelated transactions and dissimilar crimes merely because some evidence might be common to all of the counts." *Id.* at 628. In considering the requirements of Rule 8(a), I sever Counts 3 and 4 from Counts 5 and 6. There is no evidence that the Beverly and Peabody incidents are parts of the same transaction, nor that they are acts constituting part of a "common scheme or plan." They are also not of the "same or similar character" as the First Circuit has interpreted that phrase. These are, as defendant asserts, unrelated incidents. They are brought under different statutes, involve different victims, different witnesses (with some overlap via the testimony of Jason Stone), and different locations. The one strong factor pointing in favor of joinder, temporal proximity, does not outweigh the other considerations outlined by the First Circuit in *Taylor* and its progeny.

In its opposition to the motion to sever, the government argues that Counts 3 and 4 are of the "same or similar character" as Counts 5 and 6. The government first attempts to focus the Court's attention on Counts 4 and 6, the § 924(c) charges accompanying the Beverly and Peabody incidents, and points out that these two counts are in fact brought under the same statute. This is unconvincing. The § 924(c) charges each accompany a very different substantive charge, and cannot thus sweep in, or meaningfully link, the two separate incidents to which they attach.

Next, the government argues that the common link connecting the charges, the gun, is sufficient to make joinder proper under Rule 8(a). In support of its argument, the government properly points out that there will be substantial overlap of testimony connecting Mr. Capozzi to the gun in one or more of the other incidents. The government thus concludes that "virtually all the evidence supporting Counts 3 and 4 would be admissible at a trial on Counts 5 and 6, and vice versa." However, under the *Randazzo* analysis, some overlap in evidence is not a dispositive factor in determining whether joinder is permissible under Rule 8(a).

Finally, the defendant argues that there will be prejudicial spillover if all three incidents are tried together. This is a relevant consideration under Fed. R.Crim.P. 14. Although limiting instructions can alleviate this concern, lumping the three incidents related to each other only by the use of a gun poses a risk of undue prejudicial spillover. The Court will carefully consider the admissibility of the other incidents under Fed.R.Evid. 404(b) and 403.

■ Although the felon-in-possession charge properly links together the three incidents of possession as one charge under § 922(g)(1), the defendant has agreed to waive double jeopardy rights. Thus, the government may prosecute the three incidents of felon-in-possession separately. Absent a waiver of double jeopardy rights, consecutive prosecutions of a felon in possession charge, even where possession takes place on different occasions, violates double jeopardy. *See United States v. Jones*, 533 F.2d 1387, 1391 (6th Cir.1976) (finding gun possessions on separate occasions to be one "course of conduct," barring multiple punishments); *United States v. Horodner*, 993 F.2d 191, 193 (9th Cir. 1993) (finding possession of firearm on separate dates was continuous course of conduct, barring multiple convictions); *United States v. Rivera*, 77 F.3d 1348, 1351 (11th Cir.1996), *cert. denied*, 517 U.S. 1250, 116 S.Ct. 2511, 135 L.Ed.2d 200 (1996). (finding that where there is no

proof that a defendant's possession of a gun is interrupted, government may not "carve possession into separate offenses").

However, at the defendant's initiative to sever counts, the government presents no reason why the defendant may not waive future double jeopardy objections and defenses. As defendant has pointed out, courts have allowed successive prosecutions where defendants initiated a request for separate proceedings. *See Jeffers v. United States*, 432 U.S. 137, 152, 97 S.Ct. 2207, 2217, 53 L.Ed.2d 168 (1977) (rejecting claim of double jeopardy where defendant had insisted upon separate trials for greater and lesser included offenses); *Ohio v. Johnson*, 467 U.S. 493, 502, 104 S.Ct. 2536, 2541, 81 L.Ed.2d 425 (1984) (holding that no double jeopardy bar existed to successive prosecutions where defendant pled guilty to first lesser included offense); *United States v. Jelinek*, 57 F.3d 655, 660 (8th Cir.1995) (finding that defendant's insistence on submitting only one count to jury amounted to motion to sever two counts, and defendant thus waived a double jeopardy objection to retrial on the remaining count); *United States v. Edmond*, 924 F.2d 261, 270 (D.C.Cir.1991) (finding no double jeopardy bar where defendant moved for severance of conspiracy and murder charges).

It may be that no double jeopardy problem arises here at all. In a closely analogous context, the Eleventh Circuit has held that a finding of not guilty as to one date of firearm possession did not preclude a retrial as to the second date of firearm possession. *See Rivera*, 77 F.3d at 1351. The district court in *Rivera* used a special verdict form, which divided one count of 18 U.S.C. § 922(g)(1) into two "charges," and instructed the jury that it could convict upon a finding that the defendant possessed a firearm on either of two dates. The jury returned a verdict of not guilty as to one date, but deadlocked as to the second date. Defendant moved to dismiss the indictment on double jeopardy grounds. On appeal, the circuit court reasoned that the not guilty finding as to one date did not constitute an acquittal of the posses-

sion charge, since proof of possession on one date was not necessary to support a conviction for the offense. Thus, a retrial as to the second date of possession did not violate the Double Jeopardy Clause, since jeopardy did not fully terminate when the court declared a mistrial. *Id.* at 1352.

Since this resolution of the severance issue was urged by the defendant, and inures to the defendant's benefit, we are not presented with "the governmental overreaching that double jeopardy is supposed to prevent." *Johnson*, 467 U.S. at 502, 104 S.Ct. 2536. *See also Jeffers*, 432 U.S. at 152, n. 20, 97 S.Ct. 2207 (noting that government did not in any way contribute to separate prosecutions, given that government sought a joint trial on the two indictments); *Edmond*, 924 F.2d at 270 (emphasizing that defendant's own severance motion, and not the government, caused defendant to be "put twice in jeopardy").

Because defendant has agreed to waive the double jeopardy claim, the Court severs counts pursuant to Fed.R.Crim.P. 8 and 14. The three incidents will be tried separately. Therefore, trial on Count 1 (as it relates to Peabody) and Counts 3 and 4 will commence on November 1, 1999.