# United States Court of Appeals
## For the First Circuit

No. 08-1856

UNITED STATES OF AMERICA,

Appellee,

v.

SEAN CROTO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. D. Brock Hornby, U.S. District Judge]

[Hon. David M. Cohen, U.S. Magistrate Judge]

Before

Howard, Selya, and Hansen,[*]

Circuit Judges.

Robert J. Ruffner on brief for appellant.
Margaret D. McGaughey, Appellate Chief, and Paula D. Silsby,
United States Attorney, on brief for appellee.

June 24, 2009

---

[*]Of the Eighth Circuit, sitting by designation.

**HANSEN, <u>Circuit Judge</u>.** Sean Croto conditionally pleaded guilty to possessing firearms after having been convicted of a felony in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He now appeals the denial of his motion to suppress evidence obtained pursuant to a search warrant – specifically, the guns that formed the basis for his conviction – asserting that the warrant was not supported by probable cause. We affirm.

I.

On February 24, 2007, Michael Berube and Todd Sargent contacted the Biddeford, Maine, Police Department to make a complaint about Sean Croto. Two Biddeford police officers were dispatched to a residence to take the complaint. Sargent and Berube told the officers that they were acquaintances of Sean Croto, identified his address as 81 Foss Street, second floor, and gave the officers his birth date. They told the officers that Croto had been telling them for a few months about his "anarchy plans" to blow up the Biddeford Police Department with Molotov cocktails and to kidnap the city's mayor. Sargent explained that Croto had outlined the plans again at Croto's apartment earlier that day and had asked Sargent to join in the action, but Sargent told Croto he wanted nothing to do with it. Croto had also shown Sargent a .22 pistol and a rifle. Sargent told the officers that Croto kept the loaded .22 pistol with a clip in his hunting vest and that he kept his guns next to his desk in the living room.

-2-

Sargent also told the officers that he had seen guns in Croto's bedroom. Berube told the officers that he had visited Croto at his prior residence located at 42 Sullivan Street where he saw all kinds of guns and drugs.

Detective Richard Gagne conducted separate recorded interviews with Berube and Sargent, and he asked each of them why they had waited so long to report Croto's anarchy plans. Sargent responded that he did not believe Croto would carry out his plans, but he was fed up with him selling drugs to young people. Berube responded that he was fed up with Croto selling marijuana to his friends and that he was concerned that Croto would carry out his plans to blow up the police station.

Detective Gagne investigated Croto's criminal history, verifying that his birth date matched the date provided by Berube and Sargent. He discovered that Croto had been convicted of aggravated trafficking of scheduled drugs and of aggravated assault, both of which were state felony convictions. Detective Gagne sought a search warrant on February 25, 2007, authorizing the search of a particularly described apartment on the second floor of 81 Foss Street. Justice Thomas Humphrey of the Maine Superior Court issued the search warrant on February 26, 2007, and Biddeford police officers executed it the same day. The officers seized ammunition and three firearms – a .22 caliber pistol, a 12-gauge shotgun, and a Winchester 30-30 lever action rifle.

-3-

Croto was charged with being a felon in possession of three firearms, and he filed a motion to suppress the firearms seized during the February 26, 2007 warranted search.[1] The magistrate judge denied Croto's request for a Franks[2] hearing and recommended that the district court deny the motion to suppress. The magistrate judge concluded that Detective Gagne's affidavit provided probable cause to support the warrant, and even if it did not, that the Leon[3] good faith exception applied. The district court adopted the magistrate judge's recommendation, and thereafter Croto entered a conditional guilty plea to the charges, reserving the right to appeal the denial of his motion to suppress.

## II.

"In reviewing the district court's denial of a defendant's motion to suppress, we review the district court's finding of fact for clear error and its legal determinations, including whether a particular set of facts constitutes probable cause, de novo." United States v. Rodrigue, 560 F.3d 29, 32 (1st

---

[1]Croto was also charged with, and he pleaded guilty to, conspiring to possess with intent to distribute and distributing marijuana, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(D), and 846, and using and carrying a firearm during and in relation to a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A). Croto's motion to suppress and his briefs in this court address themselves only to the guns seized during the search and the related conviction for being a felon in possession of a firearm. The other convictions are not at issue in this appeal.

[2]Franks v. Delaware, 438 U.S. 154 (1978).

[3]United States v. Leon, 468 U.S. 897 (1984).

Cir. 2009) (internal marks omitted). Croto is entitled to relief only if "no reasonable view of the evidence supports" the district court's denial of his motion. United States v. Belton, 520 F.3d 80, 82 (1st Cir.), cert. denied, 129 S. Ct. 286 (2008). We give "great deference" to the issuance of a search warrant. United States v. Scalia, 993 F.2d 984, 986 (1st Cir. 1993) (internal marks omitted). Our inquiry is limited to verifying that a substantial basis existed to support the issuing judge's "common-sense determination that, given all the circumstances set forth in the affidavit, including the veracity and basis of knowledge of persons supplying hearsay information, there was a fair probability that contraband or evidence of a crime would be found in a particular place." Id. (internal marks and emphasis omitted).

Croto takes issue with the veracity of the individuals providing the information contained in Detective Gagne's affidavit but does not dispute that those facts, if credible, supply the necessary quantum of probable cause to support the issuance of a search warrant. Croto is correct to point out that most of the information in Detective Gagne's affidavit was supplied by Berube and Sargent rather than firsthand information obtained by law enforcement personnel. Detective Gagne's affidavit repeated the information provided by Berube and Sargent to the police officers who took their original statements, including information about Croto's anarchy plans and Sargent's statements that Croto had

-5-

discussed the plans that same day and had shown Sargent two firearms at his apartment. The two citizen informants were named in the affidavit. The affidavit also described Detective Gagne's own investigation as verifying Croto's date of birth, address, and his convictions for felony crimes.

There is nothing wrong with a police officer relying on information provided by others to support the warrant application he makes, as long as the affidavit provided to the court establishes a sufficient basis for crediting the informant's reliability and his basis for knowledge of the facts supplied. See United States v. McFarlane, 491 F.3d 53, 57 (1st Cir. 2007) (face-to-face encounter with informant enhances officer's ability to judge previously unknown informant's veracity and provided sufficient basis to credit the informant's statement). Croto relies almost exclusively on case law dealing with information provided by confidential informants who are not identified in the affidavit provided to the issuing judge and who often provide information to police officers in exchange for leniency related to their own criminal conduct. Here, Berube and Sargent identified themselves to the officers, which in itself bolsters their credibility because it opens them up for charges related to making a false report. See United States v. Brown, 500 F.3d 48, 54 (1st Cir. 2007) ("Since he was known to the police, he could have been held accountable if his information proved inaccurate or false.").

-6-

Further, Berube and Sargent willingly provided the information and received nothing in return; they were concerned citizens reporting potential criminal activity, whose stories may be more easily accepted than those of confidential informants whose motivations make their stories more suspect. See Scalia, 993 F.2d at 987 ("In the absence of a prior record of reliability, we have recognized that, where the informant was 'not a professional but a private citizen with no known criminal record or other criminal contacts, who came forward on his own, the informant's story may be more easily accepted ....'") (quoting United States v. Campbell, 732 F.2d 1017, 1019 (1st Cir. 1984) (some internal marks omitted)).

The details of the information, as well as the timeliness of it, also lend to the credibility of the information provided by Berube and Sargent. See United States v. Strother, 318 F.3d 64, 68 (1st Cir. 2003) (noting that confidential informant's reliability was bolstered by the level of detail he provided about the suspect sufficient to overcome the informant's lack of a track record of providing accurate information). Detective Gagne's affidavit relayed that Sargent gave explicit details about the guns that Croto showed him, describing the rifle as an "old fashion[ed] kind" with a lever and a large brass bullet, as well as their location inside Croto's apartment, stating that the .22 pistol was kept loaded with a clip in Croto's hunting vest and the guns were kept next to a desk in the living room. The affidavit also informed the

issuing judge that Sargent had seen the guns in Croto's apartment on the same day Sargent reported it to the officers and Detective Gagne completed the affidavit. Finally, Berube's statements that Croto told him about his plan to blow up the police station and kidnap the mayor and that Berube had seen numerous firearms in Croto's former residence corroborate Sargent's more detailed recitation. See United States v. Schaefer, 87 F.3d 562, 566 (1st Cir. 1996) ("[C]onsistency between the reports of two independent informants helps to validate both accounts."). Considering the totality of the circumstances bearing on the named informants' "veracity, reliability, and basis of knowledge," United States v. Romain, 393 F.3d 63, 71 (1st Cir. 2004), cert. denied, 545 U.S. 1122 (2005), we conclude that the affidavit provided sufficient probable cause to support issuance of the search warrant.

Croto argues that the affidavit was misleading to the extent that it omitted Berube's and Sargent's statements revealing their bias against Croto. Croto argues that had the statements been included in the affidavit, they would have sufficiently undermined the informants' credibility so as to render the affidavit inadequate to support a finding of probable cause. Although Croto sought a Franks hearing in the district court, he does not challenge the denial of a hearing on appeal. He addresses the omitted information on appeal only as it bears on the probable cause determination.

We agree with the district court that even if Detective Gagne had included Berube's and Sargent's statements in his affidavit about why they delayed in contacting the police concerning Croto's anarchy plan, the issuing judge still would have found probable cause to issue the warrant. The district court concluded that the omitted information did not minimize or alter the detailed facts set out in the affidavit that provided probable cause to believe that Croto was a convicted felon in possession of firearms.  Regardless of how long the two informants had known about Croto's alleged anarchy plan, Sargent contacted the police on the very day he saw firearms in Croto's apartment, establishing probable cause that police officers would find evidence of a crime at the place to be searched.  The district court further concluded that the omitted facts provided a plausible explanation for why Berube and Sargent, as concerned citizens, waited to contact the police – namely, that they had had enough of observing Croto deal drugs to young people and of listening to his anarchy plans that they decided to do something about it.  We agree with the district court that the omitted information would not have changed the issuing judge's probable cause determination.

## III.

The district court's denial of Croto's suppression motion is <u>affirmed</u>.